Robert W. HICKS, Appellant,

v.

J. Edward DAY, Postmaster General of the United States (individually and as Postmaster General of the United States), et al., Appellees.

No. 15979.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 21, 1961.

Decided April 6, 1961.

Mr. Richard A. Mehler, Washington, D. C., with whom Mr. Charles P. Hovis, Washington, D. C., was on the brief, for appellant.

Mr. Robert E. Powell, Atty., Dept. of Justice, Baltimore, Md., of the bar of the Court of Appeals of Maryland, pro hac vice, by special leave of court, with whom Asst. Atty. Gen. George C. Doub at the time the brief was filed, Messrs. Oliver Gasch, U. S. Atty., and John G. Laughlin, Jr., Atty., Dept. of Justice, were on the brief, for appellees.

Before FAHY, DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This action was brought by plaintiff [appellant] for reinstatement to his position with the United States Post Office, from which he claims he was wrongfully removed. A similar suit filed by plaintiff in 1956 was dismissed by the District Court for failure to substitute indispensable parties and was appealed unsuccessfully to this court. Hicks v. Summerfield, 1958, 104 U.S.App.D.C. 286, 261 F.2d 752. That action did not terminate until the Supreme Court denied certiorari. 1959, 359 U.S. 959, 79 S.Ct. 798, 3 L.Ed.2d 766. Thereafter, the present action naming the proper parties was filed in the District Court, plaintiff contending

* Sitting by designation pursuant to Sec. 294(d), Title 28 U.S.C.

there, as here, that his dismissal was unlawful because he was not afforded the procedural safeguards of the Lloyd-La Follette Act, 5 U.S.C.A. § 652. On cross-motions for summary judgment, the District Court granted the motion of defendants [appellees] and denied that of plaintiff.

Plaintiff has spent a number of years in Government service. He first acquired civil service competitive status in the War Department in 1938, from which position he resigned in 1943. He again acquired competitive status as a patent examiner in 1947 and served in that capacity until he transferred to the Veterans Administration in 1952. In 1954 he resigned from the last named position. Later in that year, he was given an indefinite appointment with the Post Office, in lieu of reinstatement. The notice of appointment contained the following statements:

"Indefinite Appointment
   (in lieu of reinstatement)
"This action * * * may be subject to investigation. * * *
"Probationary period completed."

In 1955, plaintiff's indefinite appointment was converted to a career appointment by virtue of Executive Order No. 10577, 19 Fed.Reg. 7521 (1955), 5 U.S.C.A. § 631 note, which reads in pertinent part as follows:

"Part I—Civil Service Rules. Sec. 5.2 Authority of the Commission to make investigations

"The Commission may make appropriate investigations to secure enforcement of the Civil Service Act, Rules, and Regulations, including investigation of the qualifications and suitability of applicants for positions in the competitive service. *It may require appointments to be made subject to investigation to enable the Commission to determine, after appointment, that the requirements* * * * have been met * * *." [Emphasis supplied.]

"Part II—Special Provisions For Transition From Indefinite Appointment System To Career-Conditional Appointment System

"Sec. 201(a) *Under such conditions as the Civil Service Commission may prescribe,* all employees serving under indefinite appointments * * * shall * * * have their appointments converted to career-conditional appointments if they have had less than three years of creditable service * * *. [Emphasis supplied.]

"(b) *The Commission may prescribe the conditions under which employees who are serving under indefinite appointments * * * may be examined * * *.* [Emphasis supplied.]

"(c) All employees * * * who * * * are serving under indefinite appointments * * * based upon prior service with a competitive status shall * * * have their appointments converted * * * to career appointments if they have had three or more years of [creditable] service * * *."

The notice of conversion to career appointment read in pertinent part:

"This action is subject to all applicable laws, rules, and regulations and may be subject to investigation.

*   *   *   *   *   *

"Substantially continuous creditable service from 7–21–47 to 5–9–54."

Later in 1955, plaintiff received notification of suspension for an indefinite period and appealed to the Board of Appeals & Review of the Civil Service Commission. He was subsequently advised by letter that his intra-agency appeal from suspension had been determined adversely to him "[b]ecause of the nature of the offenses leading up to the issuance of charges against you by the Veterans Administration and evidence of difficulties in previous Government employments. * * *"

The Government urges three grounds on which it is contended the judgment of the District Court should be affirmed: (1) that the action is mooted by plain-

tiff's physical disability (for which he is receiving a pension), which prevents his reinstatement;[1] (2) that plaintiff is barred by laches; and (3) that, in any event, plaintiff is not within the coverage of the Lloyd-La Follette Act.

Since we agree with the Government on the merits of this case, we pass over the first two grounds urged.

In urging the third ground, the Government contends that plaintiff's indefinite appointment was subject to an eighteen-month period of investigation, as prescribed by Civil Service Regulations, 5 C.F.R. § 2.112, and that the subsequent conversion from "indefinite" to "career" status did not remove this condition.

Plaintiff contends that the Civil Service Commission was without power to retain this period of investigation after conversion. He points to the language of the executive order and notes that § 201(c), under which the conversion was made, makes no provision for Commission regulations and conditions, while § 201, subsections (a) and (b) expressly authorize the Commission to make such conditions.

We think plaintiff's contentions must fail, not only by virtue of the language of the executive order itself but also by virtue of the very nature of career and career-conditional appointments. Executive Order No. 10577, § 5.2 quoted supra, expressly empowers the Commission to make appointments subject to investigation. We agree with plaintiff that the silence of § 201(c) of the order supports an inference that the President did not intend the Commission to make conditions thereunder; however, we think that an examination of the nature of the two types of appointment (career and career-conditional) and of the conditions pertinent thereto made by the Commission clearly shows that the "conditions"

expressly referred to in § 201, subsections (a) and (b) are something other than the "investigation" authorized by § 5.2.

"Career-conditional appointment. * * * (2) Upon completion by the appointee of three years of creditable service, his career-conditional appointment shall be automatically converted to a career appointment. * * * (3) An eligible given a career-conditional appointment shall be required to serve a probationary period of one year. * * *" 5 C.F.R. § 2.301(a) (Supp.1960).

"Appointments are made subject to investigation to continue the Commission's jurisdiction to investigate the qualifications and suitability of an applicant after appointment. * * * The condition 'subject to investigation' shall not be construed as requiring any employee to serve a new probationary or trial period or as extending the probationary or trial period of any employee." 5 C.F.R. § 2.107(d) (Supp.1960). [Emphasis supplied.]

We note that plaintiff's notice of indefinite appointment in lieu of reinstatement contained the notation "probationary period completed." We think the "conditions" referred to in the executive order refer to this probationary period of the career-conditional appointment during which the Commission determines the appointee's competence and bear no relation to the investigation which looks to the character of the employee.

It is to be further noted that, ante-dating the executive order, the Commission had adopted certain regulations which expressly stated that all appointments were subject to investigation, stating the purpose to be retention of Commission jurisdiction to investigate after appointment rather than to require prospective ap-

---

1. Any money judgment for back pay must be rendered by the Court of Claims. In any event, the only money judgment to which plaintiff makes claim is predicated on the interval of the 68 days which elapsed between his suspension and the

award of the disability annuity, and 539 hours of sick leave. Remuneration for the sick leave would have been at full rate; the disability annuity, at a lower rate, would have commenced to run only when the sick leave was exhausted.

pointees to await completion of the investigation before commencing Government employment. Since these regulations were in effect when Executive Order No. 10577 was handed down, and since that order expressly reaffirms, in § 5.2, the Commission's power to make appointments subject to investigation, we must conclude that the Commission acted properly in plaintiff's case. Therefore, since plaintiff's appointment was expressly made subject to an eighteen-month period for investigation, and since the suspension as a result of investigation was made within that eighteen-month period, plaintiff was not entitled to a hearing under the Lloyd-La Follette Act. See Civil Service Regulations, 5 C.F.R. § 2.112 and § 5.2 (1949); see also Civil Service Regulations, 5 C.F.R. § 2.107(a) (Supp. 1960).

The judgment of the District Court is Affirmed.